[No. 13292-7-III.    Division Three.    April 25, 1995.]

RANDOLPH H. CARRAS, ET AL, *Appellants*, v. LINDA LOUISE JOHNSON, ET AL, *Respondents*.

*John A. Hoglund,* for appellants.

*Barbara H. Thompson* and *Lehner, Mitchell, Rodriguez & Sears,* for respondents.

SWEENEY, A.C.J. — Randolph H. Carras sued Linda Louise Johnson and Edith and Woodrow Walker[1] for injuries sustained in a car accident. After attempting personal service on Johnson and the Walkers, Carras substituted service on the Secretary of State. The trial court granted Johnson's and the Walkers' motion for summary judgment and dismissed the action. Carras appeals. The dispositive issue is whether Carras' efforts to serve Johnson and the Walkers satisfied the due diligence requirement of the substituted service statute, RCW 46.64.040, as a matter of law. We conclude that he did and reverse.

## FACTS

Carras and Johnson were involved in a motor vehicle accident on August 17, 1989. The accident report listed Johnson's address as "505 SE 5th St., Hermiston, Oregon". It also listed the registered owners of the car as Edith and Woodrow Walker, residing at "Rt. 2, Hermiston, Oregon".

On December 26, 1989, Carras filed a summons and complaint naming as defendants "Linda Louise Johnson; Edith and Woodrow Johnson". An amended summons and complaint was filed on January 2, 1990, adding an allegation that the vehicle was owned by Johnson's parents, "Edith and Woodrow Walker". Due to discovery challenges and an impending trial date which Carras could not meet, Carras took a voluntary nonsuit, without prejudice. CR 41(a)(1)(B). Whether Carras served the Defendants is not clear from the

---

[1]Although named in the complaint as Edith and Woodrow Johnson, the owners of the vehicle are Edith and Woodrow Walker. They are not related to Johnson.

record. He claims proper service was effected on Edith Walker in Oregon on January 26, 1990. The Walkers, however, do not admit service and point out the absence of any proof of service.

On August 17, 1992 (the date on which the 3-year statute of limitation expired), Carras again filed a summons and complaint in Walla Walla County Superior Court. The second complaint again named as the defendants Linda Louise Johnson and Edith and Woodrow Johnson. It also alleged that the Johnsons (the Walkers) were Johnson's parents.

On November 5, the attorney for the Plaintiffs forwarded copies of the 1992 summons and complaint to ABC-LMI Legal Messengers, Inc., a Seattle company, whose services included service of process, requesting service on the three Defendants. ABC-LMI in turn forwarded the documents to Pronto Process and Messenger located in Pasco, Washington. Pronto's service area included Hermiston, Oregon. On November 12, Pronto advised the Plaintiffs' attorney that it had been unable to locate the Defendants.

Pronto's owner, Mark Owens, attested that "after due search, careful inquiry and diligent attempts" he was unable to contact the Defendants. His "Affidavit of Not Found or Non-Service Return" represented that the Walkers were unknown at the Route 2 address and could not be located. The affidavit relating to the Johnson service stated that "505 SE 5th St., Hermiston, Oregon" was an incorrect place for service, that Johnson could not be located within the area, and that she had moved and a forwarding address was unknown.

On November 13, 1992, the Plaintiffs' attorney filed an affidavit with the Secretary of State's office in Olympia in support of his effort to obtain substitute service. He represented that he had exercised due diligence in attempting service of process on the Defendants.

The Secretary of State mailed, by registered mail, return receipt requested, the summons and complaint to Johnson at the Hermiston address, to Ms. Walker at the Route 2

address, and Mr. Walker at the Irrigon, Oregon, address.[2] The documents were returned as undeliverable.

On December 10, 1992, Johnson and the Walkers moved for summary judgment based on a lack of jurisdiction for failure to serve within 90 days of the filing of the complaint. Johnson filed an affidavit which stated that at about the time of the accident she moved to her current address of "Route 1, Box 1674, Hermiston, Oregon". According to Johnson, both the United States Postal Service and the Department of Motor Vehicles for the state of Oregon were aware of the change of address. In opposition to the motion, the Plaintiffs' attorney argued that during the period August 17 through November 13, 1992, he had made various telephone inquiries in the Walla Walla area in an attempt to locate Johnson and the Walkers. The Plaintiffs' attorney asserted that the addresses in the police report were not valid. He also stated that he used the nonresident motorist statute because of the impending expiration of the statute of limitation.

Relying on *Martin v. Triol*, 121 Wn.2d 135, 847 P.2d 471 (1993), the court concluded that Carras had not exercised due diligence in attempting to serve the Defendants personally and therefore was not entitled to avail himself of the substituted service provided by RCW 46.64.040. A judgment dismissing all Defendants with prejudice was entered. Carras appeals.

RCW 46.64.040 provides for substituted service on the Secretary of State provided that certain conditions are met including an "affidavit of the plaintiff's attorney that the attorney has with *due diligence* attempted to serve personal process upon the defendant at all addresses known to him or her of defendant and further listing in his or her affidavit the addresses at which he or she attempted to have process served". (Italics ours.) The two leading cases on the due diligence issue are *Martin v. Meier*, 111 Wn.2d 471, 760 P.2d 925 (1988) and *Martin v. Triol, supra*.

---

[2] The record is unclear as to how the Plaintiffs' attorney learned that Mr. Walker was no longer living with Ms. Walker. Nor is it clear as to how the attorney obtained Mr. Walker's Irrigon address.

In *Meier*, plaintiff attempted to serve the defendant at a Seattle address listed on the accident report. He also asked neighbors about the defendant's whereabouts and inquired at the university the defendant had attended at the time of the accident. He checked the telephone directory and contacted police about the defendant. The plaintiff filed the action in King County, based on the Seattle address. Unbeknownst to the plaintiff, the address given by the defendant on the accident report was his parent's. Neighbors told the process server the defendant had moved to California $2^1/2$ to 3 years earlier.

The court ruled that due diligence does not require all "conceivable means need be used", but requires a plaintiff to make "honest and reasonable effort[s]" to locate the defendant:

> Not all conceivable means need be used, but an honest and reasonable effort should be made to find defendant . . . [W]here plaintiff possessed information regarding defendants' whereabouts, . . . but failed to follow up on that information, plaintiff did not make the honest and reasonable effort necessary to allow for service by publication.

*Meier*, at 481. It concluded therefore that the plaintiff had exercised due diligence in attempting to locate and serve the defendant.

In *Triol*, the plaintiff began his efforts to serve the defendant 5 days before the expiration of the 90-day service of process period. Unable to locate the defendants, because they were on a sailboat in Canada, the plaintiff substituted service on the Secretary of State pursuant to RCW 46.64.040.

Although the defendants in *Triol* were residents of Washington, the court concluded RCW 46.64.040 was applicable because the defendants had left the state.[3] Relying on the definition of due diligence set out in *Meier*, the court held that "at the least, the accident report, if made, must be examined and the information [in it] investigated with reasonable effort.' " *Triol*, at 150 (quoting *Meier*, at 482). The court determined that the plaintiff's inability to serve the

---

[3]While the statute authorizing substituted service originally applied only to non-resident motorists, the statute applies to Washington residents who are involved in a motor vehicle accident and thereafter leave the state. *Meier*, at 476.

defendants personally was not because of a lack of due diligence, but was because the defendants had been on vacation.

■ Both *Meier* and *Triol* are distinguishable. Both, however, provide guidelines, which are helpful. First, although the issue of due diligence is normally a factual one reserved for the trier of fact, if the factual issues are undisputed, the question is one of law for the court. *Triol,* at 151. The facts here are undisputed. The only question is whether they justify the conclusion of due diligence, as a matter of law.

■ Next, the term "due diligence" has been interpreted to require "[n]ot all conceivable means . . . but an honest and reasonable effort . . .". *Meier,* at 481. Arguably, if all reasonable means had been used, service would have been effected.

■ The determination of what particular set of actions are sufficient to constitute due diligence is not subject to mathematical certainty. Both *Meier* and *Triol,* however, focus on a number of considerations in arriving at their conclusions that the plaintiffs' efforts were reasonable.

First, the focus of our inquiry should be on what the plaintiff did, rather than on what the plaintiff failed to do. *Triol,* at 150 ("[n]ot all conceivable means need be employed"); *Meier,* at 481; *see also Carson v. Northstar Dev. Co.,* 62 Wn. App. 310, 316, 814 P.2d 217 (1991) (rejecting the claim that plaintiffs' actions were per se less than honest or reasonable because they had failed to check corporate filings with the Secretary of State or property holdings with the assessor's office).

Second, the plaintiff has a right to rely on the information in the accident report. *Meier,* at 482 ("at the least, the accident report, if made, must be examined and the information therein investigated with reasonable effort"); *Triol,* at 150; *Parkash v. Perry,* 40 Wn. App. 849, 853, 700 P.2d 1201 (1985).

Third, the plaintiff has the full period of the statute of limitation within which to attempt to effect service. *Meier,* at 480; *Triol,* at 150. Waiting until days before the statute runs does not militate against a finding of due diligence.

Finally, *Meier* considered the absence of prejudice to the defendant. *Meier,* at 483 ("[m]oreover, nothing in this record

indicates that defendant was prejudiced. Plaintiff did not default when she could have done so").

Applying these considerations to the facts here, we conclude Carras' efforts, while certainly not exhaustive, were both honest and reasonable. He retained a professional process server in his attempts to locate and serve the Defendants. He relied upon the information, including the addresses, set out in the accident report in attempting to effect service. While it is true the Walkers were misnamed "Johnson", that error is harmless. The process server was correctly directed to serve the Walkers,[4] not the Johnsons. The process server attempted to serve the Walkers not the Johnsons and the return of service documented the server's attempt to serve the Walkers rather than the Johnsons. Had the instructions to the process server erroneously directed the process server to serve Edith and Woodrow Johnson, a valid argument could be made that, contrary to the considerations discussed in *Meier* and *Triol*, the Plaintiffs had failed to consider the information on the accident report. The Plaintiffs here began their efforts to serve the Defendants 9 days before the statute of limitation ran. Finally, there is no showing of prejudice to the Defendants. The Plaintiffs' efforts to effect service in this case were both honest and reasonable, as a matter of law.

The summary judgment of the trial court is reversed and the matter remanded for further proceedings. Carras' motion to supplement the record is denied. The documents relating to the 1990 service are not relevant and the others submitted are already part of the record.

SCHULTHEIS, J., concurs.

MUNSON, J. (dissenting) — I dissent because I do not believe this record supports the trial lawyer's due diligence in attempting to serve the named Defendants.

As noted, this case evolved out of an automobile accident in Walla Walla County and a lawsuit was instituted in 1990.

---

[4]The "Affidavit of Not Found or Non-Service Return" referred to "Edith Walker/Johnson" and "Woodrow Johnson/Walker".

Presumptively, that lawsuit was dismissed for lack of service. A second lawsuit was started in 1992 and process servers were unable to find the Defendants and thereafter Plaintiffs' trial attorney served the Secretary of State pursuant to RCW 46.64.040.

The not-found affidavit of the process server from Pasco indicates that the same address was given for Edith Walker/ Johnson of Route 2, Box 2277, Hermiston, Oregon, but he was unable to locate her. As to Woodrow Johnson/Walker, the address given was Route 2, Box 543, #108, Irrigon, Oregon, and he was unable to locate him. As to Linda Louise Johnson, the address of 505 SE 5th Street, Hermiston, Oregon, indicates she could not be located in the area.

Trial counsel said he made numerous telephone calls to the Walla Walla area in an attempt to locate these Defendants. He does not identify the persons called. The proposed Defendants were known to be residents of Oregon at the time of the accident and while the Walla Walla process server may well cover portions of Oregon, the not-found affidavit does not reflect any of the steps taken by either the sheriff in serving the original lawsuit or the process server in serving the subsequent lawsuit.

The original trial attorney does not set forth any steps he took to locate these Defendants after dismissing the first lawsuit and his filing with the Secretary of State. The process servers outlined the steps they took to locate these Defendants. Plaintiffs' attorney was no help to them.

Therefore, I agree with the trial court there is no evidence of due diligence in an attempt to effect service and would affirm the dismissal of this lawsuit.